UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| STEVEN PHELPS, *et al.*,<br>　*Plaintiffs*, | )<br>)<br>) | |
| *vs.* | )<br>) | 2:09-0327-JMS-WGH |
| PARSONS TECHNICAL SUPPORT, INC.,<br>　*Defendant.* | )<br>)<br>)<br>) | |

## ORDER ON PLAINTIFFS' MOTION TO CERTIFY COLLECTIVE ACTION

In April 2010, Plaintiffs filed an Amended Complaint asserting, in relevant part, claims against Defendant Parsons Technical Support, Inc. ("Parsons") for failing to pay wages in violation of the Fair Labor Standards Act ("FLSA") and the Indiana Wage Payment Act ("IWPA"). [Dkt. 58 ¶¶ 88-98 (Count I), 109-114 (Count III).] Presently before the Court is Plaintiffs' Motion to Certify Collective Action on these claims. [Dkt. 59.]

### BACKGROUND

The parties do not dispute the facts, except as noted. Plaintiffs were hourly-paid employees of Parsons at the Newport Chemical Agent Disposal Facility ("NECDF") in Newport, Indiana. NECDF was in the process of neutralizing chemical weapon stockpiles for the United States Army. Parsons operated the NECDF under a contract with the Army. Pursuant to various regulations, Parsons was required to provide a mask carrier containing an air-purifying safety mask to all employees who worked behind the double-fenced area at NECDF. Parsons required employees inside a limited area (known as the double-fence area) to have their mask carriers at all times when on site.

### A. Pre-Shift

Upon arriving at the NECDF, Plaintiffs went to a mask trailer located outside the double-fence area to pick up their mask carriers.[1] Plaintiffs were required to store their mask carriers in their assigned lockers at the mask trailer. After donning their mask carriers, Plaintiffs who worked inside the double-fence area went to the Entry Control Facility ("<u>ECF</u>") to be processed by security. Upon entering the double-fence area, Plaintiffs were required to change from street clothes into clothing provided by Parsons before proceeding to their designated work area. Plaintiffs allege that donning the mask carrier, ECF processing, and changing into the work clothes generally took them between twenty and thirty minutes. [*See, e.g.*, dkts. 60-2 ¶ 20; 60-3 ¶ 20; 60-4 ¶ 20.] Because Plaintiffs had to arrive at their designated work area by the official start time of their shift, they typically arrived at the mask trailer thirty minutes before the official start time of their shifts. [*See, e.g.*, dkts. 60-2 ¶ 21; 60-3 ¶ 21; 60-4 ¶ 21.] Plaintiffs allege that they were instructed not to record the time spent donning the mask carrier, ECF processing, and changing clothes on their time cards.

### B. Meal Periods

Plaintiffs allege that Parsons deducted thirty minutes of pay each day for time designated for meals. Plaintiffs also allege, however, that they were required to be on call during meal breaks, were not allowed to leave the double-fence area, and were consistently interrupted by supervisors and other employees with work-related issues. Parsons alleges that it did not have a policy of interrupting employees' meal periods and that maintenance employees and operations employees who were interrupted or on call during their lunch period were paid for that time.

---

[1] Parsons contends that the mask trailer was shut down in March 2009. [Dkt. 93 at 6 ¶ 10.] Plaintiffs admit that the mask carrier policy changed in September 2009 and that they were not required to pick up their mask carriers from the mask trailer from that date forward. [Dkt. 60 at 15.]

### C. Post-Shift

Plaintiffs engaged in shift turnovers, changed into street clothes, processed out with the ECF, and returned their mask carriers to the mask trailer after their shifts. Plaintiffs allege that because they were not allowed to leave their work area until at or near the end of their shift, they did not leave the mask trailer until between five and twenty minutes after the end of their shift after doffing their work clothes, being processed, and returning their mask carriers.

### D. Policy Change

Parsons alleges that on July 28, 2006, operations and maintenance technicians were instructed to include as paid time "all time beginning when they picked up their mask at the mask trailer until the time they returned their mask to the mask trailer." [Dkt. 93 at 8 ¶ 17.] According to Parsons, employees generally credited themselves fifteen minutes of pre-shift and fifteen minutes of post-shift time to conduct the donning, doffing, and security screenings after that date. [*Id.* at ¶ 18.] Plaintiffs "strongly dispute that any such policy was put into effect." [Dkt. 109 at 1.]

## DISCUSSION

### I. Collective Action Certification Standards

The FLSA provides that an action for unpaid overtime compensation may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action differs significantly from a class action brought pursuant to Federal Rule of Civil Procedure 23. *Moss v. Putnam County Hosp.*, 2010 U.S. Dist. LEXIS 74735 *4 (S.D. Ind. July 21, 2010). The primary difference is that plaintiffs who wish to be included in a collective action must affirmatively opt in by filing a written consent with the Court, while members of a Rule 23 action are automatically included unless they affirmatively opt out. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Rule 23

and its standards governing class certifications do not apply to a collective action brought under the FLSA. *Moss*, 2010 U.S. Dist. LEXIS 74735 at *5.

An employee may only bring an action on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b). Therefore, to decide whether to initially certify a collective action, the Court must determine whether members of the proposed class are, in fact, similarly situated. *Campbell v. Advantage Sales & Mktg., LLC*, 2010 U.S. Dist. LEXIS 87077 *10 (S.D. Ind. Aug. 24, 2010). Neither the United States Supreme Court nor the Seventh Circuit Court of Appeals has provided specific guidance on when certification is appropriate, but district courts within this Circuit typically use a two-step inquiry. *Lallathin v. Ro Ro, Inc.*, 2010 U.S. Dist. LEXIS 64096 *2 (S.D. Ind. June 28, 2010); *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 604 (W.D. Wis. 2006).

The first step, also known as the notice stage, involves the analysis of the pleadings and affidavits that have been submitted to determine whether notice should be given to potential class members. *Campbell*, 2010 U.S. Dist. LEXIS 87077 at *9. Although the first step of certification does not impose a high burden on the plaintiff, "this does not mean that the modest factual showing is a mere formality." *Id.* at *11. It serves as an important and functional step in the certification process because "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wis. Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942, *9-*10 (E.D. Wis. Sept. 11, 2008) (citation omitted).

The second step of certification occurs after discovery has largely been completed and allows a defendant the opportunity to seek decertification of the class or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA. *Id*. at

*9. Under this more stringent inquiry, courts typically consider three factors: (1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns. *Threatt v. CRF First Choice, Inc.*, 2006 U.S. Dist. LEXIS 50934, *19 (N.D. Ind. July 21, 2006).

The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. *Raymer v. Mollenhauer*, 2010 U.S. Dist. LEXIS 84273 *3 (S.D. Ind. Aug. 16, 2010). Courts have held, however, that being similarly situated does not require identical positions of the putative class members; instead, it requires that common questions predominate among the members of the class. *Campbell*, 2010 U.S. Dist. LEXIS 87077 at *10; *Alvarez*, 605 F.3d at 449. A district court may conditionally certify a more limited class when a plaintiff has defined the class too broadly. *See, e.g.*, *Moss*, 2010 U.S. Dist. LEXIS 74735.

## II. Federal Overtime Claim (Count I)

### A. Allegations in Amended Complaint

Plaintiffs asserted that they would bring a collective action for the following proposed class in their Amended Complaint:

> All persons who are, or have been, employed by Parsons, from November 5, 2007, as Operators (or Operations Technicians), Maintenance Technicians, Instrument & Control ("I&C") Technicians, and other similarly-situated hourly-paid employees, who regularly or frequently worked inside the double-fenced area and were not paid overtime for any time worked over 40 hours in any workweek for pre-shift, on-call meal periods, and post-shift activities.

[Dkt. 58 at 12 ¶ 74.] In their Motion, however, Plaintiffs defined the proposed class as follows:

> Anyone who was employed by Parsons Technical Support, Inc. as a non-exempt employee, who regularly or frequently worked inside the Chemical Limited Area (or "double-fenced" area), at any time during the last three (3) years.

[Dkt. 60 at 3.]

Parsons argues that Plaintiffs' definition of the proposed class is broader in their Motion than what they asserted in their Amended Complaint, and that Plaintiffs should be limited to the class definition they pled. [Dkt. 93 at 21-22.] Plaintiffs acknowledge that the class proposed in their Motion varies from what they pled in their Amended Complaint but contend they "are simply making the language more understandable." [Dkt. 109 at 13.]

The Court agrees with Parsons that the class Plaintiffs propose in their Motion to Certify is broader than the class they pled in their Amended Complaint. For example, the class pled in the Amended Complaint is limited to employees with specific job titles who worked more than 40 hours in any workweek as of November 5, 2007. These limitations are absent in the class proposed in the Motion to Certify. Plaintiffs have not moved to amend their Amended Complaint and cannot broaden the proposed definition through their Motion to Certify. *See, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1263-64 (11th Cir. 2009) (recognizing that motion to amend complaint is necessary before class as pled can be broadened). Therefore, the Court will not broaden the definition of the putative class beyond what Plaintiffs allege in the Amended Complaint.

### B. Parsons' Motion to Strike

Plaintiffs submit fifteen affidavits with their Motion to support their allegation that Parsons did not pay them for time spent donning and doffing the required gear. [Dkts. 60-2 to 60-16.] Parsons argues that as of July 28, 2006, operations and maintenance technicians were instructed to include "all time beginning when they picked up their mask at the mask trailer until the time they returned their mask to the mask trailer." [Dkt. 93 at 8 ¶ 17.] Parsons submits thirteen affidavits with their response to support their contention that employees were told to record their time spent donning and doffing. [Dkts. 93-2 to 93-14.] Plaintiffs "strongly dispute that any

such policy change was put into effect," [dkt. 109 at 1], and submit twenty-one affidavits with their reply brief to support their assertion that they were told not to record donning and doffing time, [dkts. 109-1 to 109-21.]

Parsons filed a Motion to Strike the twenty-one affidavits submitted on reply, arguing that they improperly raise new arguments. [Dkt. 115.] The Court did not rely on these additional affidavits because the fifteen affidavits Plaintiffs initially submitted with their Motion to Certify also attest that they were not paid for time spent donning and doffing.[2] [Dkts. 60-2 to 60-16.] Because the Court did not rely on the affidavits at issue, Parsons' request to strike them is denied as moot.

Parsons also requests that the Court strike an argument it alleges that Plaintiffs improperly made for the first time on reply: that Parsons' July 2006 policy to record donning and doffing time constitutes a uniform pay policy that supports class certification. [Dkt. 116 at 1.] While the Court agrees with Parsons that parties cannot raise new arguments on reply, *Aliwoli v. Gilmore*, 127 F.3d 632, 634-35 (7th Cir. 1997), Plaintiffs made the argument at issue in direct response to an argument Parsons raised in opposition to the Motion to Certify. Specifically, in response to Plaintiffs' Motion, Parsons cited the July 2006 policy and submitted affidavits to support its contention that its employees were told to record time spent donning and doffing. [Dkts. 93 at 8 ¶ 17; 93-2 to 93-14.] In reply, Plaintiffs disputed that the July 2006 policy was actually followed and argued that Parsons' attempt to implement a policy applicable to all employees actually supports Plaintiffs' argument that the employees are treated the same and, therefore, similarly situated for purposes of the collective action. [Dkt. 109 at 3.] Because Plaintiffs' argument is in

---

[2] Parsons concedes that the affidavits submitted with the reply "are identical in most substantive respects" to the affidavits Plaintiffs initially submitted. [Dkt. 116 at 2.]

direct response to an argument made by Parsons, the Court denies the remainder of Plaintiffs' Motion to Strike.

### C. Defining the Class

The parties dispute whether Plaintiffs are similarly situated to the individuals they seek to represent. Plaintiffs survey the putative class metaphorically from 5,000 feet above to diminish any differences between them. Parsons zooms in and focuses on the individualized nature of various jobs and the alleged differences that abound between members of the putative class. Additionally, Parsons proposes various limitations on the putative class, including limiting it to individuals who held the same job as the named Plaintiffs.

A district court has wide discretion to manage collective actions. *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010). As other district courts have noted in this context, "If one zooms in close enough on anything, differences will abound." *Kasten v. St.-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 957 (W.D. Wis. 2008); *Frank v. Golden Plump Poultry, Inc.*, 2007 U.S. Dist. LEXIS 71179, *12 (D. Minn. Sept. 24, 2007) ("[E]ven for a single employee doing a single job, the amount of time that she spends donning and doffing on Monday will differ, at least minutely, from the amount of time that she spends donning and doffing on Tuesday. But plaintiffs' claims need to be considered at a higher level of abstraction.")

The Seventh Circuit recently held that "[i]f common questions predominate, the plaintiffs may be similarly situated even though the recovery of any given plaintiff may be determined by only a subset of those common questions." *Alvarez*, 605 F.3d at 449. Variations in damages between members of the class are not material for purposes of collective action certification if recovery would be determined by applying mathematical formulae common to all class members. *Id.* at 449 n.1 ("If the paramedics in this litigation ultimately recover, their recovery will be determined by the application of mathematical formulae common to all class members, although

specific variables (numbers of hours worked, hourly wage, etc.) will vary from individual to individual."). If necessary, a district court can appoint a special master to "resolve a difficult computation of damages." Fed. R. Civ. Pro. 53(a)(1)(B)(ii); *Alvarez*, 605 F.3d at 449 n.1.

The Court concludes that, based on the record before it in this case, the named Plaintiffs have made the requisite modest factual showing that common questions predominate between them and some members of the putative class they seek to represent. Specifically, common questions surround whether some members of the class are entitled to overtime compensation for (1) pre-shift work activities including picking up a mask carrier from the mask trailer, standing in line to process through the Entry Control Facility, and changing clothes or engaging in shift turnover; (2) on-call meal periods; and/or (3) post-shift work activities including returning the mask carrier to the mask trailer.

The Court also concludes, however, that the named Plaintiffs have not made the required showing that they are similarly situated to all members of the putative class they seek to represent. All of the named Plaintiffs were Maintenance Technicians during the relevant time period,[3] but they also seek to represent Operators/Operations Technicians, Instrument & Control Technicians, and other "similarly-situated hourly-paid employees" they do not more specifically identify. [Dkt. 58 at 12 ¶ 74.] Plaintiffs have not made a modest factual showing that they are similarly situated to workers in these other positions with respect to the categories of work-related activities for which they allege they were not paid overtime, and this requirement is not a mere formality. *Campbell*, 2010 U.S. Dist. LEXIS 87077 at *11. Based on the foregoing, the

---

[3] One of the named Plaintiffs, Dale Eppert, attests that he was employed as a Utility Operator from April 2006 to April 2007 before he was a Maintenance Technician. [Dkt. 60-7 at 3 ¶ 3.] Plaintiffs do not specifically seek to represent Utility Operators in the class they pled in their Amended Complaint. Moreover, Mr. Eppert was not a Utility Operator during the relevant time period Plaintiffs proposed—after November 5, 2007.

Court will conditionally certify a collective action class for all Maintenance Technicians, as specifically defined at the end of this Order.

### III. State Claim for Unpaid Wages (Count III)

Plaintiffs' Amended Complaint also asserts state law claim for unpaid wages under the IWPA. [Dkt. 58 at ¶¶ 109-114.] Plaintiffs argue that the IWPA "is compatible" with the FLSA and abruptly conclude that "Indiana law requires the identical similarly situated standard for class action as the FLSA . . . ." [Dkt. 60 at 21.] Parsons argues that IWPA claims can only be brought as class actions governed by Rule 23 and, consequently, Plaintiffs' Motion should be denied as to the state law claims because Plaintiffs "have not moved for certification of their IWP[A] claims under Rule 23 nor have they set out to establish that they satisfy the elements of Rule 23(a) or (b)." [Dkt. 93 at 29.] Plaintiffs ignore this portion of Parsons' argument in their nineteen-page reply brief. [Dkt. 109.] Plaintiffs' silence is conspicuous considering that they acknowledge in their Amended Complaint that their state law claims may "be maintained as a Class Action under Rule 23 of the Federal Rules of Civil Procedure . . . ." [Dkt. 58 at ¶ 81.]

The Court agrees with Parsons that a state law claim under the IWPA would be governed by Rule 23 as a class action, not as a collective action. *See Boyd v. Jupiter Aluminum Corp.*, 2006 U.S. Dist. LEXIS 35654 *19 (N.D. Ind. May 31, 2006) ("state law claim under the Indiana Wage Payment Act . . . if certified as class action, would be governed by Federal Rule of Civil Procedure 23"). Plaintiffs have not moved to certify a class for their state wage claim under Rule 23. Local Rule 23.1 requires a plaintiff in a proposed class action to file a separate motion requesting class certification under Rule 23(c)(1) "[w]ithin 90 days after the filing of a complaint . . . unless this period is extended on motion for good cause appearing." Plaintiffs have not filed a motion for class certification and have not moved to extend the deadline.

Administering and adjudicating a collective action and a class action in the same case would be logistical chaos because the plaintiffs would have to opt-in to one and opt-out of the other. Additionally, allowing Plaintiffs to assert an opt-out state law class action with a collective action "would undermine the purpose behind § 216(b)'s requirement that 'No employee shall be a party plaintiff to [and FLSA collective action] unless he gives his consent in writing to become such a party . . . .'" *Pridemore v. Jiffy Mini-Marts, Inc.*, 2008 U.S. Dist. LEXIS 95760 (S.D. Ind. Nov. 24, 2008) (quoting 29 U.S.C. § 216). Because Plaintiffs have not moved for class certification under Rule 23 or an extension under Local Rule 23.1 and because administering a class action and collective action in the same case would undermine the purpose behind § 216(b), the Court will not certify a Rule 23 class action on Plaintiffs' state wage claim.

## CONCLUSION[4]

For the reasons detailed in this Order, this Court **DENIES** Parsons' Motion to Strike, [dkt. 115], **GRANTS IN PART** Plaintiffs' Motion to Certify Collective Action, [dkt. 59], and conditionally certifies a collective action class defined as follows:

> All persons who are, or have been, employed by Parsons, from November 5, 2007, as hourly-paid Maintenance Technicians, who regularly or frequently worked inside the double-fenced area and were not paid overtime for any time worked over 40 hours in any workweek for the following: (1) pre-shift work activities including picking up a mask carrier from the mask trailer, standing in line to process through the Entry Control Facility, and changing clothes or engaging in shift turnover; (2) on-call meal periods; and/or (3) post-shift work activities including returning the mask carrier to the mask trailer.

Parsons shall submit to Plaintiffs a list of the names and addresses of employees falling within the conditionally certified class by **November 12, 2010**. Plaintiffs shall submit to the Court a revised proposed notice consistent with this Order by **November 19, 2010**. Parsons shall file

---

[4] Contemporaneously with this Order, the Court issues an order granting Parsons' Motion for Judgment on the Pleadings on Counts II and VI of Plaintiffs' Amended Complaint.

any objection to Plaintiffs' proposed notice within **seven days** of Plaintiffs' submission. Additionally, by **November 19, 2010**, the parties are **ORDERED** to submit a joint statement identifying the individuals who submitted consent forms, [*see, e.g.*, dkt. 12-1], who do not fall within the definition of the conditionally certified class.

DATED: 10/29/2010

*Jane Magnus-Stinson*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Jesse S. Brar
LAW OFFICE OF JESSE BRAR
jesse.brar@gmail.com

Mick G. Harrison
mickharrisonesq@earthlink.net

Eric R. Magnus
JACKSON LEWIS, LLP
magnuse@jacksonlewis.com

Stephen X. Munger
JACKSON LEWIS LLP
mungers@jacksonlewis.com

L. Dale Owens
JACKSON LEWIS, LLP
owensd@jacksonlewis.com

Michael W. Padgett
JACKSON LEWIS LLP
padgettm@jacksonlewis.com

Sharon L. Preston
ATTORNEY AT LAW
sharon.preston@yahoo.com

Rudolph William Savich
rsavich@aol.com